## VILLAGE OF HIGHLAND FALLS, NEW YORK v. UNITED STATES.

### No. 48731.

United States Court of Claims.

Feb. 7, 1949.

Abraham Kopald, of Highland Falls, N. Y., for plaintiff.

David D. Hochstein, of Brighton, N. Y., and A. Devitt Vanech, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and MADDEN, LITTLETON, WHITAKER and HOWELL, Judges.

MADDEN, Judge.

The plaintiff, a municipal corporation in the State of New York, has brought this action to recover damages for an alleged breach of an agreement which, it asserts, the United States made with it. The Government demurs and also pleads that the matter is res adjudicata. The facts stated in the plaintiff's petition will, therefore, be summarized and considered.

In 1931 bills were pending in both Houses of Congress the purpose of which was to authorize the Secretary of War to acquire for the Government by purchase or, if necessary, by condemnation, certain lands in the State of New York, in the vicinity of the United States Military Academy at

West Point. The Town of Highlands, the plaintiff the Village of Highland Falls, and a school district of the vicinity all presented to Congress objections to the enactment of the legislation. One of the objections was that the acquisition by the Government of the lands might adversely affect the water supply of the plaintiff village. The Chairman of the Committee of the House of Representatives which was considering the legislation directed that representatives of the War Department and of the objecting municipalities should confer and agree upon measures which would be necessary to protect the interests of the municipalities. Such conferences were held and it was agreed that there should be inserted in the pending bill the following language: "provided that nothing herein contained shall adversely affect the existing water supply, its sources or pipelines of the Town of Highlands, New York."

The plaintiff village was in the Town of Highlands and was intended to be protected by the language quoted.

In the conferences the Secretary of War, in addition to agreeing to the insertion in the bill of the quoted language, made other promises which he embodied in a letter, dated February 28, 1931, which he addressed and delivered to the municipalities. We quote the letter in a footnote.[1] In reliance upon the agreements reached in the conferences, the municipalities withdrew their objections to the proposed legislation, which, after the insertion of the language agreed to be inserted, and quoted above, was enacted, and was approved March 3, 1931, 46 Stat. 1491.

In 1931 the plaintiff owned a tract of some 400 acres of land which was a part of the approximately 15,000 acres of land which constituted the watershed from which the plaintiff's water supply was obtained. It was this tract which the Secretary's letter agreed to acquire.

In 1942 the Government took, by eminent domain proceedings in the United States District Court for the Southern District of New York, a large number

---

[1] "War Department
"Washington
February 28, 1931
"To the Board of Trustees,
"Village of Highland Falls, New York
"Town Board, Town of Highlands, New York
"Board of Education,
"Union Free School District No. 2,
"Town of Highlands, New York.
"Gentlemen:

"It has been brought to the attention of the War Department that the municipal interests which you represent are apprehensive that under the provisions of a bill now pending in Congress, H.R. 14811, S. 5732, certain lands in the town of Highlands, New York, which now bear a considerable portion of the assessed taxes of your respective municipalities will be taken by the government of the United States Government, thus depriving said municipalities of the taxes upon the same.

"You are advised that should the measure above referred to be enacted into law, the War Department will not, under the authority therein contained, acquire title to any lands or property east of U. S. Highway Route 9W as it now lies in said Town of Highlands, and Village of Highland Falls, New York, within a period of five years from July 1, 1932.

"Immediately after July 1, 1932, the War Department will, insofar as it has legal authority, take all necessary steps to acquire the land upon which the water supply and system of the Village of Highland Falls, is located, including the purchase, at a price mutually agreeable, of the interest therein which said village now owns in the watershed from which this supply is obtained. When the watershed is acquired, the War Department will guarantee to said Village of Highland Falls the right to the use of the water up to the capacity of the said Village of Highland Falls's present watershed without charge.

"The War Department will also permit the settlement known as Fort Montgomery in the said town of Highlands to tap the West Point pipe line free of charge to supply the necessary water for all domestic purposes provided that such connection with the pipe line will not impair the water supply to West Point.

"This statement is made to you for the purpose of obtaining your consent to the bill now pending and will not be binding on either party if said bill fails to be passed by the present Congress.
"Sincerely yours,
"(Signed)   Patrick J. Hurley,
"Secretary of War."

of tracts of land belonging to various owners, and including the 400-acre tract belonging to the plaintiff. The plaintiff in its answer filed in the Government's eminent domain proceeding, prayed for a judgment that the Government might acquire title to the plaintiff's tract only in accordance with the agreement embodied in the letter of February 28, 1931, of the Secretary of War, which letter we have quoted. The Government moved to strike the plaintiff's answer, and the court granted the motion. The court entered a judgment of condemnation, confirming the acquisition of title by the United States to the plaintiff's land. Commissioners of Appraisal were appointed, and made their report and award, which was confirmed by the court on October 6, 1944. The plaintiff appealed to the Circuit Court of Appeals for the Second Circuit, which affirmed the judgment of the District Court and in its opinion said that it was not concerned with the validity of the alleged contract made by the Secretary of War, and that the plaintiff was at liberty to sue on that contract when it chose to do so. 154 F.2d 224.

On numerous occasions since July 3, 1942, the date when the eminent domain proceedings were begun, the plaintiff has made demands upon the United States to carry out the agreement made by the Secretary of War and embodied in his letter, but the United States has failed and refused to comply with these demands. It took no steps to acquire the land upon which the water supply and system of the plaintiff was located, which land and the waterworks on it were owned by the Citizens Waterworks Company. It did not purchase at a price mutually agreeable the plaintiff's 400-acre tract which was a part of the watershed. It did not offer to give to or guarantee to or make available to the plaintiff the right to the use of water up to the capacity of the 1931 watershed without charge or on any other basis.

When the Government failed to acquire the land and the waterworks of the Citizens Waterworks Company, the plaintiff acquired it at considerable expense for the price of the property and the necessary legal and engineering services for its acquisition, which expense it claims as damages for the alleged breach of contract. The plaintiff also claims that the Government in the eminent domain proceedings acquired the plaintiff's 400-acre tract at a price less than the amount contemplated by the parties and less than its fair value either in 1931 when the alleged contract was made, or in 1943 when the land was taken.

The 80th Congress by Public Law 627, Chapter 451, Second Session, H.R. 2359, approved June 12, 1948, 62 Stat. 381, authorized "the payment of a lump sum, in the amount of $85,000, to the village of Highland Falls, New York, as a contribution toward the cost of construction of a water-filtration plant, and for other purposes" upon certain provisos and conditions, for the purpose of partially compensating the plaintiff for damage to it through increased turbidity of the brook which supplies its waterworks, resulting from construction activities theretofore or thereafter undertaken by the Department of the Army in connection with the construction of a moving target range and golf course on the military reservation at West Point.

The plaintiff asks for damages of $300,000. The Government demurs on the grounds (1) that the petition does not state a cause of action and (2) that the petition shows on its face that the asserted cause of action has been barred by the statute of limitations, the period of which is six years. The Government also pleads that the cause of action here asserted was adjudicated in the eminent domain proceedings described above, and hence cannot be again litigated here.

■ We think the Government's plea of res adjudicata is not valid. The only question which the District Court and Circuit Court of Appeals had before them in the eminent domain case was the question whether, assuming the Secretary of War's promises constituted a contract valid against the Government, the existence of that contract would disable the Government from acquiring the property by eminent domain. The Circuit Court of Appeals made it plain that it answered that question in the negative, and it therefore held that

the eminent domain proceeding was permissible. It said, as to the Secretary of War's letter, "With the validity of that contract we have no concern, the Village is of course free to sue upon it whenever it chooses; but its existence is altogether irrelevant in this proceeding." United States v. Village of Highland Falls, 2 Cir., 154 F.2d 224, 226.

We consider, then, the legal effect of the Act of March 3, 1931, and the letter of the Secretary of War. The act, which authorized the Secretary of War to acquire the lands desired for the addition to the West Point Reservation, contained, as we have seen, none of the terms of the letter. It included the proviso, which we have quoted, that nothing in the act should adversely affect the existing water supply from which the plaintiff obtained its water. There is no allegation in the petition that anything has been done under the act which has adversely affected the water supply. No claim under the proviso of the act is, therefore, stated in the plaintiff's petition.

The mention, in the petition, of the appropriation by Congress in 1948 of $85,000 to be paid to the plaintiff as a contribution toward the cost of a filtration plant shows that Congress recognized the Government's responsibility for a violation of the proviso in the 1931 Act, and gave at least partial compensation for the violation.

As to the Secretary's letter, one of its promises was that the War Department would "purchase, at a price mutually agreeable, * * * the interest" of the plaintiff in the watershed. This interest was the 400-acre tract which the plaintiff owned. We think that this promise did not constitute a contract. It set no price, nor any way of arriving at a price except by future mutual agreement. Such a promise gives rise to no legal right, hence the fact that the Government acquired the plaintiff's 400 acres by eminent domain proceedings rather than by buying it at a price mutually agreed upon did not give the plaintiff a ground for a lawsuit.

Another promise in the Secretary's letter was that the War Department would, insofar as it had legal authority, take all necessary steps to acquire the land upon which the water supply of the plaintiff village was located and, when the watershed had been acquired, the War Department would guarantee to the plaintiff village the right to the use of the water up to the capacity of the village's 1931 watershed without charge. This seems to be a promise to acquire not only the land on the slope of the watershed, which the Government did proceed to acquire, but also the land in the basin at the foot of the watershed, and upon which the waterworks which served the village were located. This latter land the Government did not acquire by eminent domain or otherwise, and the plaintiff complains that this failure was a breach of contract. This basin land and the waterworks on it belonged to the Citizens Waterworks Company. The petition does not state and it does not occur to us wherein the failure of the Government to acquire this land and these works harmed the plaintiff, so long as the waterworks were operated and the water from the watershed came through the same works and pipes to the plaintiff village. If this part of the promise was valid, and was breached, no damage from its breach is adequately alleged, and we are not authorized to give judgment for nominal damages. The real basis of the plaintiff's claim, in relation to the Government's failure to acquire the waterworks, is that it further failed to furnish water to the plaintiff without charge, as the Secretary's letter said it would. The promise to buy a waterworks and system of pipes which were not to be used for any Government purpose, and to operate the works and system, apparently in perpetuity, to furnish free water to a municipality which had been buying its water from a private owner of the same works and system before, was so remarkable that we have difficulty in believing that that is what the Secretary's letter really meant. But if we assume that it did mean that, we think the burden is on the plaintiff to show that the Secretary had authority to bind the Government to such a promise. The plaintiff gives us no help on this crucial legal question, and we therefore resolve it against the plaintiff. If this promise to operate the waterworks and furnish free

water to the plaintiff village was invalid, the promise to acquire the land upon which the system was located would be pointless, and that is an additional reason why the promise to acquire the land, though breached, is not the basis of a legal claim.

■ The plaintiff urges that the Act of March 3, 1931, and the letter of the Secretary of War must be considered as parts of the same transaction by the authorized representatives of the United States which, together, created rights in the plaintiff. If the Congress had incorporated the promises of the Secretary's letter in the statute, they would, of course, be legally binding. But it put in the statute only the proviso which we have quoted, and neither incorporated by reference nor authorized the making of the promises made by the Secretary. There is some slight intimation in a colloquy which took place in the hearings of a Subcommittee of the Committee on Military Affairs of the House of Representatives, some weeks before the legislation was enacted and the Secretary's letter written, that some Congressmen were thinking of the Government's acquiring the waterworks and selling water to the village.[2] But there is nothing in the legislative history to show that Congress was aware of the promises which the Secretary's letter contained, or that Congress intended, even sub silentio, to authorize them or ratify them. Not finding authority for these promises in the 1931 statute, we have, as we have said, looked to the plaintiff to point us to such authority elsewhere in the law, and, since it has not done so, we have concluded that the promises were unauthorized and invalid.

The Government urges that if the Secretary's letter did constitute a contract, it was breached so long ago that the statute of limitations has barred a suit upon it. Because of our conclusion that the letter did not constitute an enforceable contract, we do not decide the question of the statute of limitations.

The plaintiff's petition will be dismissed. It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER and LITTLETON, Judges, concur.

---

[2] Hearings before Subcommittee No. 1, Committee on Military Affairs, House of Representatives, 71st Cong. 3d Sess. on H.R. 8480, H.R. 14811, S. 5732, Thursday, Feb. 12, 1931, p. 34.